[Crim. No. 5632.   Second Dist., Div. Three.   Nov. 16, 1956.]

THE PEOPLE, Respondent, v. FRANK MARKOS,
Appellant.

Gladys Towles Root and Eugene V. McPherson for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

SHINN, P. J.—Frank F. Markos was charged with four violations of Penal Code, section 476a (issuing a check without sufficient funds), and with two prior convictions of the same offense. He pleaded not guilty and denied the former convictions. Trial was to the court. The evidence consisted of that received at the preliminary hearing and additional evidence introduced at the trial. The court found him guilty on each count and found the prior convictions to be true. He appeals from the judgment. Defendant contends that the evidence was insufficient to sustain the judgment and that the court erred in denying him a continuance to secure the attendance of a material witness for the defense.

There was evidence of the following facts: Defendant was one of the owners of the Ferris Charles Exploration Company, which was formed in late April or early May, 1955. Its business was to locate uranium and other precious minerals. Defendant maintained a checking account in the name of Charles Exploration Company at the Inglewood Branch of the Bank of America. The authorized drawer was Ferris Charles, a name used by defendant. The account was closed by the bank on May 27, 1955, after it had been attached. The balance prior to the attachment was $6.14. Defendant made no arrangements for credit with the bank and there was no subsequent deposit to the account. The bank's policy is to send written notice to a depositor if his account is closed due to an attachment.

Arthur Ayvazian, a grocery clerk, cashed for defendant a

$125 check of the Charles Exploration Company, dated May 30, 1955. The check was signed ''Ferris Charles'' and drawn on the above mentioned bank. Stanley Slago, a waiter at a restaurant, cashed for defendant a $100 check of the Charles Exploration Company, dated June 9, 1955, signed and drawn as above. Stanley Price cashed for defendant a $100 check of the Charles Exploration Company, dated June 9, 1955, likewise signed and drawn as above. George Waidner accepted from defendant a check of the Charles Exploration Company in the amount of $304.58, dated June 18, 1955, also signed and drawn as above. The check was in payment for a scintillator used in prospecting for uranium. The four checks were dishonored by defendant's bank.

Defendant testified that he had agreed with the Otay Agricultural Corporation to run tests for mineral content on land owned by it in San Diego County. He was in continuous telephone contact with the corporation's president, Stephen Birch, who was in New York. Markos worked for Birch until about June 28, 1955. During May and the early part of June, Birch was to deposit $350 per day for sixteen days into defendant's bank account for work Markos had already done. Birch told him over the telephone that the money had been deposited. Markos assumed that it had been. He never received a statement from the bank and thought the money was there. He admitted drawing the checks. He stated that he talked to Birch about a dozen times after his arrest, asking Birch to come to California to straighten the matter up, and Birch told him he would come to California after January 1st to close up the corporation's books for the year and that he would settle with defendant at that time.

On cross-examination Markos admitted telling the police when he was arrested that he had no idea how much money he had in the bank. Robert Leonard, an employe of defendant, testified that he overheard a telephone conversation between defendant and a man he understood to be Birch in the early part of May, 1955, during which Birch stated that some money would be deposited to defendant's account.

Hugh E. Brown, a police officer for the city of Los Angeles, testified on behalf of defendant. He stated that he was one of the investigating officers in the case and that he talked with Markos at the time of his arrest on August 5, 1955. Defendant asked to make a long distance telephone call to an unidentified person whose name ''would be brought out at the

proper time'' who was supposed to have made deposits to his account, but had failed to do so. Markos told Brown that he wanted to find out why the deposits were not made. He admitted to Brown that he did not know how much money he had in the bank when he drew the checks.

The first assignment of error to be considered is insufficiency of the evidence to show that Markos intended to defraud the payees of the four checks. This contention is without merit. ▪ An intent to defraud is a fact which may be inferred from the acts or admissions of the accused, or from the surrounding circumstances. Viewing the evidence, as we must, in the light most favorable to the prosecution, we believe the court was fully justified in concluding that defendant knew that he lacked the funds with which to pay the checks upon their presentation at the bank.

▪ The checks were drawn within several days to three weeks after defendant's bank account had been closed. The action in which the bank account was attached was against defendant and his company. Their office furniture, papers and files were taken under attachment. Thereafter the checks were cashed. It was the bank's custom to notify its depositors if their accounts were closed by an attachment. Markos admitted to Officer Brown that he did not know how much money he had in the bank. He testified that he was too busy prospecting in San Diego to verify his bank balance. He had made no arrangements for credit with the bank. He did not tell the persons who accepted the checks that his bank balance might be insufficient. Defendant's denials of wrongful intent created only a conflict in the evidence. The circumstantial evidence indicated that defendant knew there was insufficient money in the bank account to cover the checks, that it had been attached and the account closed.

There is no merit in the assignment of error attributed to the court's refusal to grant defendant a continuance in order to obtain Stephen Birch as a defense witness. The preliminary hearing was held on September 14, 1955. Trial was set for November 14, 1955. At that time, defendant moved for a continuance until December 15th so as to secure Birch's presence. The People rested their case on the transcript of the preliminary hearing and the matter was continued until December 13th. It was again postponed to December 20th because defendant's attorney was engaged in another trial. On December 20th, defendant renewed his motion. It was denied and the court proceeded to hear the defense. At the

close of the evidence defendant again moved for a continuance and it was again denied.

The court's power to grant a continuance because of the absence of a material witness is discretionary, and its determination will not be reversed on appeal unless there has been a clear abuse of discretion. (12 Cal.Jur.2d 143.) Penal Code, section 1050, provides, *inter alia*, that: ". . . No continuance shall be granted for any longer time than it is affirmatively proved the ends of justice require." The showing in support of defendant's motion was insufficient. No affidavit was filed. Defendant offered to prove, by his own testimony, that Birch would corroborate his own story as to the arrangements made with the Otay Agricultural Corporation for deposits to the bank account. There was no showing of Birch's willingness to appear. Defendant's attorney had made no effort to get in touch with Birch. He had refrained from contacting Birch at defendant's request. Defendant had over three months from the date of the preliminary hearing to get Birch to come to California. He could have taken his deposition (Pen. Code, § 1349 et seq.). He had the benefit of several continuances. The court did not abuse its discretion in refusing a further postponement. There are no other assignments of error.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.