[Crim. No. 6542. Second Dist., Div. One. June 11, 1959.]

THE PEOPLE, Respondent, v. HERMAN BLOEMSMA et al., Defendants; EARL CARTER TRIPP et al., Appellants.

Richard A. Haley for Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

FOURT, J.—Each appellant in this case has appealed from a judgment wherein each defendant was found guilty of assault.

In an information filed in Los Angeles County on July 25, 1958, Herman Bloemsma, Earl Carter Tripp and Donald Marion Andersen were charged with violating section 245, Penal Code (assault by means of force likely to produce great bodily harm). In count I of the information each defendant was charged with assaulting Delmo K. Sheeley, and in count II each defendant was charged with assaulting Bea Patterson. On July 30, 1958, each defendant was arraigned and pleaded not guilty as to each count. Trial was set for, and did commence before a jury on September 2, 1958, and held through September 4, 1958.

The jury returned the following verdicts:

(1) Herman Bloemsma was found guilty as charged as to (count I) Sheeley, and not guilty as to (count II) Patterson.

(2) Tripp was found guilty of misdemeanor assault (a lesser included offense) against Sheeley, but not against Patterson.

(3) Andersen was found guilty of misdemeanor assault (a lesser included offense) against Sheeley and Patterson.

On the court's own motion, after a motion for a new trial by Andersen, the charge with reference to Sheeley (count I) was dismissed as to Andersen.

An application for probation was made by each of the defendants. On October 8, 1958, probation was granted to Tripp for three years, on condition that he spend the first one month in the county jail. Andersen received three years' probation on condition that he spend the first two months in the county jail. The appeal is from the judgment, and we will consider it as though it were from the order granting probation, in each instance. Bloemsma did not appeal. In short, Tripp stands convicted for an assault (misdemeanor) against Shee-

ley, and Andersen stands convicted for an assault (misdemeanor) against Patterson.

On June 4, 1958, at about 11:30 o'clock p. m., Sheeley, a Long Beach police officer, had stopped at Camm's, a bar operation on Lakewood Boulevard, and was seated on the first seat next to the door, drinking from a 7-Up bottle. The bar in the place of business is L-shaped, and was 3 feet 7½ inches high, and 3 feet 3 and ½ inches wide. When Sheeley arrived at the establishment, he was the only person seated at the bar; however, Bea Patterson the waitress (who was the former wife of Sheeley) and two men were playing Shuffleboard.

At or about such time, Andersen entered the place of business alone and ordered three beers from Bea Patterson. Andersen said, in effect, that two friends were with him and that they would join him very shortly. Andersen was seated around the corner of the bar about six to eight feet from Sheeley. Bloemsma and Tripp entered the place of business and seated themselves at the bar on the same side where Andersen was seated, and between Andersen and Sheeley.

Miss Patterson then observed "who they were and proceeded to take the drinks away from them." She stated to the three defendants, "that they knew they weren't supposed to be in there and that they knew better, and she stated that they couldn't drink while she was on duty," that they were intoxicated and she would not serve them, and "they were 86." She then took back the beer which she had previously placed upon the bar and poured it down the drain. Andersen vigorously protested and used vile, vulgar and profane language in speaking to Bea Patterson about the matter. She advised Andersen that she had no authority to return any money, and that he would have to see the manager. Andersen was dissatisfied with any such an arrangement, and stated that he was going to get his money back from her, and also at the same time, questioned her parentage. Sheeley saw Andersen "make a pass at her," "[s]winging his arm at her." Sheeley then got up from where he was seated and went over to Andersen and told him to watch his language, and showed the three men his police badge. Bloemsma told Andersen to "Knock it off," and said in effect that it would be cheaper to be quiet, that he, Andersen, had been drinking and that he would be booked for drunk if he was not careful. Sheeley returned to the seat he had theretofore occupied and each of the defendants sat down at the bar; the latter three discussed Sheeley, and he heard one of the defendants say that he was a "... damn cop, ... off

duty, and he has no authority." Andersen was largely concerned about, and complained of the removal of the beer, and Bloemsma was encouraging his companions to leave "before the sheriffs arrived."

The defendants then stood up to leave the establishment, when one of the defendants said something to Sheeley. Bea Patterson indicated to Sheeley that he should pay no attention to them, and then Andersen leaned over the bar, told her to keep her mouth shut, clenched his fist and struck her.

Bea Patterson stated that Andersen hit her on the left side of her face with his fist; that at such time she was standing behind the bar and he was across the bar from her; that the blow caused swelling and discoloration on her face and resulted in the chipping of two teeth.

At about the same time as Bea Patterson was being struck, Tripp struck Sheeley below the chin and on the throat. Bloemsma hit Sheeley on the face just below the eye with a 7-Up bottle, breaking and crushing the facial area. A doctor described the injury as "[t]he entire face, . . . was crushed down, . . . on this side like it was split. . . ."

The defendants introduced into evidence many photographs taken on August 15, 1958, of the inside of the establishment and the bar. These pictures showed among other things, some exacting measurements of the widths of the bar, the distance from the top of the bar to the floor, and a railing at the base of the bar about 6 inches wide and 12 inches from the floor.

The prosecution's case was presented in chief on September 2d. At 9:45 o'clock a. m., on September 3d, the defendants commenced the presentation of evidence in their behalf. During the latter part of the morning session, the record recites that counsel for the defendants approached the bench and said to the judge:

"MR. HALEY: If the Court please, *yesterday* we attempted to have a mock-up of this bar built with exact dimensions, with the intention in mind of *bring* it here and showing that Anderson couldn't possibly have reached over there. That is completed, but *it isn't here*." (Emphasis added.)

The judge indicated that he was not going to wait under the circumstances, and counsel for the defendants then said:

"By way of offer of proof we would like to show that the section we have built, although not delivered at this time, being twenty-five minutes to twelve, that we could prove and would prove that in any position here testified to Anderson could not possibly have reached any person, Miss Bea Patterson

or anybody else, across that bar with even his finger tips extended let alone his closed fist.''

The judge replied:

''May I point out these pictures were taken on August the 15th, and I don't see how any such exhibit would show anything that isn't shown by the pictures so far as the measurements are concerned, and *there is no reason why this other exhibit couldn't have been prepared at the same time;* so the Court will proceed.'' (Emphasis added.)

The defendants then rested their case.

The prosecution immediately started its rebuttal and proceeded with such until the noon recess. Court adjourned to 1:45 o'clock p. m., and rebuttal witnesses continued to testify after the noon recess. The prosecution then rested its case. Counsel for the defendants approached the bench and said:

''We do at this time have a completed cross section of this bar with actual measurements with one exception, and that is the quarter inch round that is around the top of the bar, but otherwise the section is actually the measurements of the bar. We have one of the bar stools which is a duplicate of every other bar stool in the café. We ask at this time that we be allowed to reopen our case and place that cross section in evidence and exhibit the fact that Mr. Anderson could not strike anybody from that position.''

The judge replied in effect that the pictures depicted all that counsel had spoken of, that he could not see how the replica could do any good, and further indicated that there was no good reason why the matters in question could not have been presented before, and therefore denied the motion to reopen the case. Counsel for the defendants then wanted to put into evidence the measurements of the ''mock-up sections of the bar.'' The court pointed out that the defendants had already introduced into evidence purported accurate measurements of the bar which were not questioned, and the judge said:

''This is just another example where at the very last moment something is brought into evidence that could have been produced here at the time of trial. You had known for more than thirty days that this matter was coming on for trial at the time that it did. You sent out and got your photographer. There is no reason this replica couldn't have been made, and the bar stool could have been subpoenaed here even during the course of the trial.''

The judge stated further that counsel could not use the

mock bar as a demonstration to the jury, in that it was not in evidence. The defendants again rested their case.

Appellants contend that it was error for the court not to delay the proceedings, and that it was also error to deny the motion to reopen the case and allow the introduction of the model of the bar and stools into evidence.

Counsel for appellants concedes and states the rule to be that "the granting or refusing of an adjournment or continuance of a criminal trial rests in the sound discretion of the trial court." However, counsel insists that the judge abused his discretion in this case. We think there is no merit to the assertion.

No explanation was ever attempted as to why, in the exercise of due diligence, the appellants could not have been completely prepared at the time of the start of the trial, and had available a "mock bar," had they been so minded. The appellants knew of any claimed inability on the part of Andersen to reach the barmaid by reason of the construction of the bar long before the trial convened. A preliminary hearing was apparently held and undoubtedly the evidence in that proceeding was to the effect that the barmaid was struck as heretofore indicated. In any event, the appellants had ample time from the date of their plea of not guilty to the date of the trial within which to have prepared their desired evidence, and apparently they saw fit not to do so but elected to wait until it was too late. This is not the situation where an attorney is taken by surprise because of some unusual course of events—it was not something entirely unforeseen and new which developed in the course of the trial. Appellants simply procrastinated in having the "mock bar" constructed and we think the trial judge was entirely within his power in refusing to grant the continuance and in refusing to reopen the case, under the circumstances. (See *People* v. *Beal,* 108 Cal.App.2d 200, 205-206 [239 P.2d 84] ; *People* v. *Jordan,* 72 Cal.App. 406, 408 [237 P. 757] ; *People* v. *Markos,* 146 Cal.App.2d 82, 86 [303 P.2d 363] ; *People* v. *Ponchette,* 30 Cal.App. 399, 400-401 [158 P. 338] ; *People* v. *Morhar,* 78 Cal.App. 380, 386 [248 P. 975] ; 12 Cal.Jur.2d 148-151, 159, 163.)

The judgment as to appellant Tripp is affirmed.

The judgment as to appellant Andersen is affirmed.

White, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied June 29, 1959.