[Crim. No. 1447. Fourth Dist. Apr. 20, 1960.]

THE PEOPLE, Respondent, v. JERRY L. HARDING, Appellant.

F. James Bear for Appellant.

Stanley Mosk, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

SHEPARD, J.—Jerry L. Harding and James A. Bryant were charged by an information with the crime of attempted robbery. A verdict of guilty was rendered by the jury against both defendants. Defendant Jerry L. Harding alone appeals from the judgment of conviction of attempted robbery, from the order granting probation, and from an order denying a motion for a new trial.

From the record it appears that appellant and his codefendant, Bryant, along with two other men, during the evening of June 14, 1959, engaged a taxicab driver named Barnett to take them from Coronado to Imperial Beach in San Diego County. After Barnett stopped the taxicab in front of a café in Imperial Beach, two of the men (never identified) left the taxicab and ran away. Appellant, from the rear seat of the taxicab threw a twisted towel around the neck of the driver Barnett and pulled Barnett's head backward, choking him. Appellant then said, "Give me your money or I will kill you." At the same time Bryant reached for the keys and slapped Barnett. Barnett struggled and kicked Bryant. Bryant fell out of the cab on the passenger's side. Barnett's struggle apparently pulled the towel (which remained around his neck) from appellant's grasp, and Barnett fell out of the cab on the driver's side. Barnett picked up a rock. Appellant and Bryant fled, but were apprehended by Police Sergeant Alfred Ramos across the street from the scene of the struggle.

The evidence contains considerable testimony regarding intoxication of appellant and Bryant. Appellant claims intoxication to the extent of being unable to remember anything that happened during the alleged attempted robbery. Testimony of several witnesses who observed him both shortly before and after the alleged offense, indicates that his claim of intoxication was grossly exaggerated. Evidence was received of inconsistent statements of appellant and his companion, Bryant. Bryant at one time made a full written confession of being the one using the towel, and appellant signed same as a witness. However, Bryant later repudiated the confession. In his testimony he placed the blame for the towel incident on another man he claimed was still in the back seat. He testified Harding was then still asleep and that on seeing the towel

incident he made no move to defend Barnett, but dragged Harding from the back seat, that they then left the scene and were later arrested.

■ While these and other conflicts appear in the testimony, we are required on appeal to view the whole evidence in the light most favorable to the verdict. (*People* v. *Daugherty,* 40 Cal.2d 876, 884, [2] [256 P.2d 911].) Viewing it in such light, we are satisfied there is ample evidence to support the conclusions of the jury.

Appellant contends that a record of the testimony of Sergeant Ramos, given at the first trial of this case (which ended with a jury disagreement), should not have been admitted. The record here shows that Sergeant Ramos had testified at the first trial and had been cross-examined freely by defense counsel. In preparation for the trial now before us (which is the second trial), Sergeant Ramos was subpoenaed some days before the trial, but at the opening of the trial did not appear. The court immediately issued a bench warrant for his arrest and the same was sent forthwith to the sheriff for service. The district attorney also immediately instituted an investigation to ascertain the whereabouts of Sergeant Ramos. An investigating officer from the Police Department of Imperial Beach testified that he had not seen Sergeant Ramos on duty for the previous four or five days; that he believed him to be en route to the State of Massachusetts to pick up his wife and daughter; that the previous week Sergeant Ramos had stated he was going to Massachusetts to pick up his daughter; that he had driven to Sergeant Ramos' home and saw that Sergeant Ramos' car was gone; and that there was no report of Sergeant Ramos being ill. No contrary evidence was offered by appellant, nor was the testimony of officer Harlan John Stigge that "I believe he is en route to Massachusetts to pick up his wife and daughter," objected to.

■ It is true, as contended by appellant, that the burden is on the prosecution to show due diligence in finding a missing witness in this state before the previously recorded testimony of such witness may be read in evidence. (*People* v. *Hayes,* 72 Cal.App. 292, 305 [237 P. 390]; *People* v. *McDonald,* 66 Cal.App.2d 504 [152 P.2d 448]; *People* v. *Kuranoff,* 100 Cal.App.2d 673, 676 [3] [224 P.2d 402]; *People* v. *Andrade,* 101 Cal.App.2d 509 [225 P.2d 289]; *People* v. *Redston,* 139 Cal.App.2d 485, 494 [293 P.2d 880].) However, the due diligence spoken of in Penal Code, section 686,

and in the cases above referred to, relates to finding a witness who *is* within the state. The cases cited were cases in which the evidence did not show the witness had left the state. Where the evidence sufficiently shows that the witness *is* absent from the state the due diligence requirement has no application. (*People* v. *Carswell*, 51 Cal.2d 602, 605 [3] [335 P.2d 99].)

Furthermore, and more important in the case at bar, Sergeant Ramos, while he was the arresting officer, nevertheless did not purport to have been present at the alleged robbery. His testimony covered only the fact and place of arrest; the taking of defendants back to Coronado, their identification there as having entered the taxicab of the victim earlier that evening; the statement of defendants that they had not been to Coronado that evening, and a few other matters relating to clothing and procedures of investigation. Substantially all of his testimony is either corroborated by the defendants or is not denied. In addition, substantially all of his testimony is covered by the testimony of other witnesses. The fact and place of arrest, the trip back to Coronado, identification by witnesses of Bryant and Harding after entering the cab with two other men, corresponded substantially with defendants' story so far as they could remember. Respecting Sergeant Ramos' testimony that they denied having been in Coronado that evening, Harding, in his testimony, did not deny having made such a statement, simply saying he did not remember. The codefendant, Bryant, did not deny that Harding made such a statement. Bryant, respecting his own statements, appears to deny that he said he had not been in Coronado that evening. However, his further testimony as to what took place at the time of arrest is as follows:

"Q. He didn't ask you if you had been to Coronado? A. I asked him to take us to Coronado and see if we had been there.

"Q. Why did you do that? A. I guess he asked us if we had been there.

"Q. And what did you say? A. I guess I asked him to take us there and see if we had been there.

"Q. Did he ask you if you had been there? A. Well, I don't remember if he did or not.

"Q. How did the subject come up? A. I don't know how it come up.

"Q. You can't remember? A. No, unless he had asked us if we had been there.

"Q. Well, do you remember how you came to say, 'Take us up and see if we have'? A. I guess he asked us if we had been there.

"Q. Did you have any towel with you when you got out? A. No, I guess it was left in the cab."

Thus it appears that in essence all of Sergeant Ramos' testimony was either substantially corroborated by the testimony of the two defendants or is undenied. In addition, it is in all its material aspects covered by the testimony of other witnesses. Under these circumstances, even though we should hold that the testimony of Sergeant Ramos should not be admitted, there would be no substantial prejudice such as would require a reversal.

Appellant next contends that the court erred in denying the motion of appellant to disqualify the judge from passing judgment. This arose out of an incident in which the judge became of the opinion that appellant had wilfully inserted into the testimony a statement that he, appellant, had asked for a lie detector test some time after arrest and before trial. ■ Previous to the time this statement was injected into the testimony by appellant, he had been advised by his own attorney of the ruling of the court (made in chambers to counsel) that evidence of the lie detector test by appellant would not be permitted. In this ruling the judge was correct. (*People* v. *Jones,* 52 Cal.2d 636, 653 [14] [343 P.2d 577].) ■ The record does not disclose that any affidavit or statement of prejudice was filed, nor that any properly supported motion for disqualification was made. Disqualification to complete the trial and move on to judgment does not appear from this record. (*People* v. *Wade,* 150 Cal.App.2d 281, 285 [7, 8, 9] [309 P.2d 841]; *Keating* v. *Superior Court,* 45 Cal.2d 440, 444 [7, 8] [289 P.2d 209]; *Calhoun* v. *Superior Court,* 51 Cal.2d 257, 260 [2] [331 P.2d 648]; *Jacobs* v. *Superior Court,* 53 Cal.2d 187, 190 [2] [1 Cal.Rptr. 9, 347 P.2d 9]; *Cooper* v. *Cooper,* 168 Cal.App.2d 326, 330 [3] [335 P.2d 983].)

Next appellant complains that the court's instructions to the jury on intoxication were insufficient. He does not state how he believes they were insufficient. He cites no authorities, nor does he give any details of his reasoning. ■ It is not the duty of this court to search the record in an attempt to ferret out what obscure reason prompted the bald assertion that certain instructions were insufficient under the evidence.

(*Cooper* v. *Cooper, supra,* 331 [7, 8].) Appellant does not call to our attention whether or not he offered any instruction containing elements not contained in those actually given by the court. The court did explain to the jury in full detail that while voluntary intoxication is not of itself a defense it may throw light on the question of whether or not the defendant entertained the required specific intent to take the property of Barnett by means of force or fear. The court instructed the jury that this specific intent was a necessary element of the crime charged and that this required in connection with the subject of intoxication that the jury weigh the evidence of intoxication for the purpose of determining whether or not this required criminal intent did exist in the mind of the accused at the time of the alleged attempted robbery. The instructions in this connection are carefully detailed and complete, and we cannot see how the jury could have been under any misapprehension as to the proper consideration of voluntary intoxication in connection with the specific intent. We find no error in this connection.

The judgment and orders appealed from are affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied May 17, 1960.