[Crim. No. 7040. Second Dist., Div. Three. Dec. 29, 1960.]

THE PEOPLE, Respondent, v. WILLIAM DOUGLAS et al., Appellants.

Bennie Will Meyes and William Douglas, in pro. per., for Appellants.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

VALLÉE, J.—On sufficient evidence a jury convicted defendants Douglas and Meyes of 10 counts of robbery (counts 1-6, 8-10, 13), one count of assault with intent to commit murder (count 7), and two counts of assault with a deadly weapon (counts 11, 12). The jury also found that defendant Meyes had been convicted of burglary in 1948, robbery in 1950 and in 1951, and had served terms of imprisonment therefor. Defendants appeal from the judgments and from orders denying their motions for new trials.

■ Defendants contend it was essential they be indicted by a grand jury and that it was error to proceed by information. The point has no merit. Prosecution of criminal cases by information is an alternative remedy. Due process of law does not require an indictment by a grand jury as defendants assert. (*People* v. *Thwaits*, 101 Cal.App.2d 674, 677 [226 P.2d 58].)

At the time defendants were arraigned on August 18, 1959, the public defender was appointed their counsel. When the cause was called for trial before Judge Rhone on September 30, 1959, defendants, represented by Deputy Public Defender Norman R. Atkins, filed an affidavit of prejudice and made an oral peremptory challenge under section 170.6 of the Code of Civil Procedure. The challenge was denied. Mr. Atkins made a motion for a continuance. The motion was denied. On behalf of defendant Douglas, he then requested the court to appoint separate counsel for Douglas. The request was denied. During impanelment of the jury, both defendants in open court dismissed Mr. Atkins as their counsel and requested the court for time in which to obtain private counsel. The request was denied. Defendants then determined to defend themselves without the assistance of counsel.

It is asserted the court erred in denying a continuance. On August 21, 1959, the trial was set for September 30, 1959. It was on the latter date that the court denied a continuance. The assertion is based on the contention that Mr. Atkins was not prepared to go to trial. While Mr. Atkins stated he would like more time in which to prepare, he said, ''On my own part I feel that I am prepared,'' and ''I have prepared this case so that I could defend it now.'' Mr. Atkins also said, ''as this trial progresses, I feel I would be able to do that [further prepare] as I go along, and it may not be to Mr. Meyes' satisfaction or Mr. Douglas' satisfaction, but I would be able to do that and do it properly.''

''No continuance of a criminal trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance.'' (Pen. Code, § 1050.) ■ The granting of a continuance normally rests in the discretion of the trial court. (*People* v. *Buckowski*, 37 Cal.2d 629, 631 [233 P.2d 912].) The action of the trial court will not be disturbed in the absence of a clear abuse of discretion. (*People* v. *Markos*, 146 Cal.App.2d 82, 86 [303 P.2d 363].) No abuse of discretion appears.

Defendants contend it was error not to appoint other counsel

for them at the time they dismissed Mr. Atkins on the day of trial. So far as the record shows, defendants had no ground for dismissing Mr. Atkins. The dismissal was unqualified. "DEFENDANT MEYES: I can't use him under any circumstances. I'm letting you know, Mr. Atkinson, I don't want you to represent me. MR. ATKINS: Well, that seems unqualified enough, your Honor. DEFENDANT MEYES: I don't want you to represent me. I stated that as clearly as I know how. I do not want you for my counsel. I don't want you under any circumstances. THE COURT: All right. You now state the same thing, do you, Mr. Douglas? MR. DOUGLAS: I do. THE COURT: Very well. Then, under those circumstances I will have to relieve Mr. Atkins. We will proceed with the trial.''

██ A defendant's right to counsel does not include the right to postpone the trial of a case indefinitely and reject the services of the public defender while defendant, at his leisure, attempts to find counsel. (*People* v. *Adamson*, 34 Cal. 2d 320, 332-333 [210 P.2d 13].) ██ As in *Adamson* (p. 333), ''This court can take judicial notice, too, that it would be difficult to find in California any lawyers more experienced or better qualified in defending criminal cases than the Public Defender of Los Angeles County and his staff.''

*People* v. *Simeone,* 132 Cal.App.2d 593 [282 P.2d 971], says (p. 597) : '' [W]hen the court assigned the public defender to represent appellant, the accused had at hand one of the best equipped law offices in the state to champion his cause. It has a corps of vigorous, learned, amiable gentlemen who present their causes with force and intelligence. . . . Where a person accused of crime refuses to be represented by the Public Defender of Los Angeles County, and demands that some practicing lawyer leave his private practice in order to defend such accused, the latter prefers to have cause for a grouch rather than a chance to defeat his accusers. Because there are thousands of lawyers in Los Angeles County who would gladly suffer much inconvenience rather than see the constitutional right of an accused violated, is no reason why a defendant should be privileged to dawdle with the trial court, to neglect for four weeks to obtain counsel, and then have his conviction reversed because he did not choose to be represented by the public defender.''

And in *People* v. *Williams,* 174 Cal.App.2d 364 [345 P.2d 47], (p. 378) : ''We perceive no grounds, legal or otherwise, why an accused should be permitted to refuse the services of the public defender, waive his right to counsel unless one of his choice is appointed, and then have his conviction reversed

because he did not choose to be represented by the legal aid provided by the county.''

Again, in *People* v. *Duncan,* 175 Cal.App.2d 372 [346 P.2d 521], (p. 382) : ''Defendant's right to represent himself no more includes the right to reject the services of the public defender and postpone indefinitely the trial, allowing him to at his leisure attempt to find counsel who will serve without charge, than does defendant's right to counsel.''

And, as said in *People* v. *Howard,* 135 Cal.App.2d 95 [286 P.2d 454], (p. 98) : ''No good reason was given by the defendant for terminating the services of his counsel, who was present and ready to act at all stages after the arraignment, and no prejudicial error appears.''

The court did not err in not appointing counsel for defendants at the time they dismissed the public defender on the day of trial. As the People suggest, the record clearly shows defendants were attempting improperly to delay the proceedings by a last-minute dismissal of the public defender.

It is urged the court deprived defendants of an opportunity to present alibi defenses. Defendants did not cross-examine any of the People's witnesses. When the People rested, the trial judge said to defendants: ''The People have rested. Let the record show the jurors are not present in the courtroom. The People have rested, and as soon as the jury comes back will be the time for the defendants to produce any evidence that they desire to produce. I might state that you are not required to testify. This is a criminal proceeding and, obviously, in a criminal proceeding a defendant is not required to testify against himself, and I think you should be informed of that. You do have the right to have some witnesses subpoenaed on your behalf. In the event they have not already been subpoenaed, we will serve the subpoenaes if you will give us the name and addresses of the persons that you desire to have subpoenaed. I am wondering if you are ready to proceed at this time when the jury returns.'' Defendant Meyes stated he was not qualified to defend himself, and said, ''I would like to ask again that the Court stop this illegal procedure and grant us the opportunity to have counsel to represent us.'' The judge stated a recess would be taken and ''if you do not wish to present any evidence, why, then the matter will then be closed; that is, as far as the evidence. Then the District Attorney can argue it and each of you can argue on your behalf, and the Court will instruct the jury.'' After the recess, with the jurors in

the box, the judge stated: "Mr. Douglas and Mr. Meyes, the People have rested, and this is the time to put on any evidence that you desire to put on. Mr. Douglas, do you have any witnesses you desire to call?" Defendant Douglas replied: "We are not ready, your Honor. We do not have proper counsel. We have no evidence to put on." The judge stated: "Mr. Meyes, do you have any witnesses you desire to call?" Defendant Meyes replied: "Your Honor, we cannot put on any defense without a lawyer, without counsel." The judge said: "Well, the defendants not having presented any evidence, they resist*ing* presenting any evidence, I assume then that the defendants rest." After further discussions between defendants and the court in which defendants asked the court to reconsider giving them lawyers and sufficient time to obtain an attorney, the court stated: "You have been given all the opportunity. We urged you not to discharge your counsel yesterday, and I told you what the consequences might be, and you, knowing that, you deliberately determined to discharge your counsel. . . . Well, that matter has been determined, and now is the time for argument, and you will be given an opportunity to argue the case; but you will be confined to the facts as produced here from the witness stand." The district attorney then argued to the jury. At its conclusion, the court invited defendants to argue. They declined the invitation. It is obvious defendants were not denied the opportunity to present alibi defenses.

It is contended the court erred in instructing the jury on the issue of the prior felony convictions of defendant Meyes. Meyes denied the prior convictions. The People proved them. Meyes did not testify. Before evidence was introduced to prove the priors, the judge advised Meyes it was his right to admit the priors out of the presence of the jury and if he did so the jury would not know of them. In its instructions the court merely told the jury that the information alleged, among other things, that Meyes had suffered the prior convictions. ▪ "The law is established in California that when a defendant is charged in an information or indictment with having suffered a previous conviction, if he denies at the time of his arraignment that he has suffered such previous conviction the issue thus joined must be tried by the jury which tries the issue upon his plea of not guilty to the offense charged in the information or indictment. (Pen. Code, § 1025.)" (*People* v. *Kingsbury*, 70 Cal.App.2d 128, 131 [160 P.2d 587].) The court did not err.

The court adjudged Meyes to be a habitual criminal under section 644 of the Penal Code. In doing so, the court stated: "You have previously been sentenced to the State Prison for the crime of second degree murder, and I think you also have been sentenced, or you have a term as a parole violator still remaining. In any event, you have previously been found to be a habitual criminal under Section 644a of the Penal Code. This Court also finds that you are a habitual criminal under such Section, that is, 644a." The sentence against Meyes is stated in the margin.[1]

Defendant Meyes contends the court erred in adjudging he is a habitual criminal. He asserts "he has not served the prerequis[i]te number of 'separate terms' in state prison, required by the statute, before he could lawfully be adjudged a habitual criminal."

"Every person convicted in this State of the crime of robbery, burglary of the first degree, . . . who shall have been previously twice convicted upon charges separately brought and tried, and who shall have served separate terms therefor in any state prison and/or federal penal institution either in this State or elsewhere, of the crime of robbery, burglary, . . . shall be adjudged a habitual criminal and shall be punished by imprisonment in the state prison for life." (Pen. Code, § 644, subd. (a).) The record shows that Meyes was sentenced to state prison for burglary of the second degree on January 12, 1948. He was received in San Quentin on January 24, 1948. The term of his sentence was fixed as one to 15 years. He was paroled on January 24, 1950. His parole was suspended on August 17, 1950. He was not returned to prison as a parole violator until March 24, 1951. He was sentenced to state prison for robbery of the first degree on one count on November 30, 1950. Also on November 30, 1950, he was sentenced to state prison on a second count of robbery of the first degree, the sentence to run concurrently with the first count of robbery on which he was sentenced

---

[1] "The sentences in this case, in Count number 1, are to be consecutive to the previous sentences that you have suffered, that is, consecutive to the sentence for second degree murder, and also whatever term you may have left upon your parole violation. On Counts number 2 and 3 and 12, they are to be concurrent with Count number 1. Count 4 is to be consecutive to Counts 1, 2, 3, and 12. Count 5 is to be consecutive to Count number 4. Count number 6 is to be consecutive to Count number 5. Count number 7 and 8 are to be concurrent with Count number 6. Count number 9 is to be consecutive to Count number 6, 7 and 8. Counts number 10 and 11 are to be concurrent with Count number 9, and Count number 13 is to be consecutive to Count 9, 10 and 11."

that date. Nothing was said in the judgments of November 30, 1950, as to whether the sentences were to run concurrently or consecutively with the prior sentence of 1948. However, the record of the department of corrections shows that the sentences of November 30, 1950, are to run concurrently with the prior term. On January 12, 1951, he was sentenced to state prison on one count of robbery of the first degree, the sentence to run consecutively with time on parole and with any other sentence he was about to serve. Also on January 12, 1951, he was sentenced to state prison on a second count of robbery of the first degree, the sentence to run concurrently with the first count of robbery on which he was sentenced that date and consecutively with time on parole and with any other sentence he was about to serve. On April 25, 1956, the term on the original commitment for burglary was refixed at three years and the terms of the second commitment were refixed in the aggregate of 10 years, to run consecutively with the prior term pursuant to section 3024, subd. (d), of the Penal Code. On June 3, 1957, he was released on parole. On June 2, 1958, his parole was suspended.

Meyes in effect says he is still serving the term for burglary and the terms imposed in 1950, and that the 1951 sentences do not begin to run until he has completed the outstanding 1948 and 1950 terms in their entirety.

When Meyes was returned to prison on March 24, 1951, the sentences on the 1950 judgment ran concurrently with the prior burglary sentence. (Pen Code, § 669; *Ex parte Casey,* 160 Cal. 357, 358 [116 P. 1104].) ▮ Sentences are concurrent when they run together during the time the periods overlap. (*In re Roberts,* 40 Cal.2d 745, 749 [255 P.2d 782].) ▮ A part of a term is a term. (*People* v. *Mangan,* 87 Cal.App.2d 765, 767-768 [197 P.2d 781].) ▮ The time during which Meyes served on parole must be credited to him as time served on the sentence he was serving when paroled. (*Ex parte Casey,* 160 Cal. 357, 358 [116 P. 1104].) ▮ Interruption of imprisonment in state prison due to the fact the prisoner is tried for another offense is an interruption "by legal means" for the purpose of Penal Code, section 2900, which says, "if thereafter, during such term, the defendant by any legal means is temporarily released from such imprisonment and subsequently returned thereto, the time during which he was at large must not be computed as part of such term." (39 Cal.Jur.2d. § 40, p. 667.)

▮ The first part of the burglary term—that is, **until**

Meyes began serving the sentences on the 1950 convictions—was served separately. He began the sentence on the 1950 convictions concurrently with the prior burglary sentence. (*People* v. *Sukovitzen,* 138 Cal.App.2d 159, 161-164 [291 P.2d 107].) The sentence on the prior burglary conviction, having been fixed at three years, terminated on August 28, 1951. After August 28, 1951, he was serving a separate term on the 1950 convictions. Thus it appears Meyes had served separate terms at the time sentences were imposed in the present action. We conclude he was properly adjudged to be a habitual criminal.

Defendant Meyes says the sentences as to him should have been concurrent, and concurrent with any other sentence theretofore imposed.

 Section 669 of the Penal Code provides that where one is convicted of two or more crimes in the same proceeding, the punishment for any of which is life imprisonment, the terms on the other convictions "shall be merged and run concurrently with such life term." As stated in *People* v. *Tucker,* 127 Cal.App.2d 436 [273 P.2d 934] (p. 437):

"Having been convicted on the four charges of robbery and adjudged an habitual criminal under section 644 of the Penal Code, the status of the appellant at the time of sentence herein was that of one 'convicted of two or more crimes' the punishment for which 'is expressly prescribed to be life imprisonment' under the terms of section 669. Therefore, the terms of imprisonment should be 'merged and run concurrently with such life term.'" (Also see *In re Rye,* 152 Cal.App.2d 594, 595, 596 [313 P.2d 914].) It is manifest the sentences imposed on Meyes were in violation of section 669 of the Penal Code. There is no need of a reversal of the judgment or of further proceedings in the superior court because of the sentences. It is sufficient to declare that the several sentences are merged and run concurrently with the life term imposed on Meyes as a habitual criminal.

It is asserted section 644 of the Penal Code is unconstitutional as a denial of due process and that it amounts to a bill of attainder. Classification of a defendant as a habitual criminal by reason of his prior convictions does no violence to any privilege granted by the state or federal Constitution, nor does it deprive a defendant of due process of law.

 The statute does not create a substantive offense. It merely increases the penalty on conviction of a subsequent felony. (*People* v. *Dunlop,* 102 Cal.App.2d 314, 316, 317 [227

P.2d 281].) ▇▇▇▇ The fact that the allegations of the information with respect to the priors did not name specific statutes under which Meyes had been convicted does not affect the validity of the information or the judgment as to him, as he argues. Nor was it improper for the district attorney to allege the priors in the information. (Pen. Code, §§ 969, 969a, 1025.)

Opening and closing briefs were purportedly filed by defendant Meyes in propria persona. Douglas has adopted the briefs filed by Meyes. In the closing brief, for the first time, it is said this court should have appointed counsel to represent defendants on this appeal and that its failure to do so was substantial error. On January 7, 1960, the memorandum by the presiding justice set out in the margin, agreed to by a unanimous court, was filed.[2] As therein stated, we found "that no good whatever could be served by appointment of counsel." We are still of that opinion. Further, the briefs filed by Meyes conform to the rules in all respects, are well written, present all possible points clearly and ably with abundant citation of pertinent authorities, and were no doubt prepared by one well versed in criminal law and procedure and in brief writing. There was no prejudicial error in not appointing counsel for defendants on the appeal.

There are no other assignments of error.

---

[2] "I think the request should be denied. The defendants were convicted in a jury trial of 12 felonies, 10 of them being robbery of the first degree, one assault with attempt to commit murder and one assault with a deadly weapon. On the basis of the former convictions Meyes was found to be an habitual criminal. I have gone through the reporter's transcript. The witnesses for the People described each offense and identified the defendants as the perpetrators. The defendants did not testify.

"They were arraigned August 18, 1959. The Public Defender was appointed as counsel for each defendant. They pleaded not guilty August 21 and their trial was set for September 30. At the inception of the trial the defendants against the advice and even remonstrance of the court, refused to be represented by the Public Defender and asked for appointment of counsel of their own choice. The Deputy Public Defender sought a continuance to give him more time to prepare the case or have defendants find other counsel but the continuance was denied. The Deputy Public Defender tried in every way to assist the defendants but they 'heckled' him and threatened to continue to heckle him in his efforts to represent them. Finally they discharged him. In addressing the court the defendants were obstreperous and insolent. They refused to cross-examine witnesses or to produce any witnesses of their own. At no time was any representation made to the court by either defendant except by general statements that if they were represented by attorneys they could prove that the charges were a frame-up of the People's witnesses, whom they described as a bunch of gamblers, and the police.

"The evidence of guilt was conclusive. The defendants would have had competent representation by the Deputy Public Defender. It is apparent to me that no good whatever could be served by appointment of counsel."

The judgment as to defendant Meyes is modified and it is declared that the several sentences as to him are merged and run concurrently with the life term imposed on him as a habitual criminal; in all other respects the judgment as to Meyes is affirmed. The order denying Meyes' motion for a new trial is affirmed. The judgment and order denying a new trial as to defendant Douglas are affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied January 26, 1961, and the petition of appellant Bennie Will Meyes for a hearing by the Supreme Court was denied February 21, 1961. Traynor, J., was of the opinion that the petition should be granted.