[Crim. No. 7384. Second Dist., Div. One. Apr. 4, 1961.]

THE PEOPLE, Respondent, v. JIMMIE HANZ, Appellant.

Lionel Richman, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was charged with burglarizing the homes of Wenston Groves (Count I) and Princella Haskins (Count II), and a prior narcotics offense. A jury found him

guilty on both counts of first degree burglary, and the prior conviction to be true.

■■■ Error is asserted in the denial of defendant's motion for continuance. On the last day of a three-day jury trial defendant, appearing in propria persona, made several consecutive motions for continuance. On the day before, having been directed to proceed with his defense, defendant made two requests—that the court subpoena two witnesses, and that he read to the jury part of the transcript of the preliminary hearing, both of which were denied. The trial judge then asked him if he wanted to testify, to which he replied, "No sir." The next morning defendant again declared he wanted to go "by the court script"; this denied, he said, "Then, the defendant is not ready to proceed and would like to make a motion to continue to sometime next week." Asked his reason, defendant said that he had broken off a piece of his tooth the day before; that he had evidence to present, but preferred "to bring that up at a later date." The motion was denied. Then for the first time defendant complained of being "sick," referring to the broken tooth; the court immediately recessed and appointed the jail physician to examine him. After his examination Dr. Crahan testified that although defendant claimed he had "lost a filling," he found some old fillings, palpated his finger in the tooth of which defendant complained but could feel no rough edges and it appeared that no filling had come out of it, but to give him the benefit of the doubt he had a dentist fill, with a temporary filling, not only that tooth but three others; that thereafter he examined defendant, he had no physical appearance of pain or discomfort and should have no further trouble with the filling closed; and that defendant's physical condition was such that he was able to proceed with the trial. Defendant did not testify. His second motion was denied. Asked by the court to proceed, defendant then made a third motion on the ground he felt physically unable to continue in that he had suffered with "this condition" overnight and requested that he be "immediately examined for malnutrition." The motion was denied. Again directed by the court to proceed he replied, "I refuse to go on in this condition." However, immediately thereafter he read to the jury a prepared lengthy and detailed statement of numerous constitutional rights he claimed had been denied him.

■■■ The motion for continuance created for the lower court a factual issue—whether the defendant's condition at

the time was such as to preclude him from effectively proceeding with his defense; and its determination will not be disturbed unless there appears a clear abuse of its discretion. (*People* v. *Leeper*, 117 Cal.App.2d 462 [256 P.2d 389]; *People* v. *Northcott,* 209 Cal. 639 [289 P. 634, 70 A.L.R. 806]; *People* v. *Fitzgerald,* 14 Cal.App.2d 180 [58 P.2d 718].)

We find none in the record before us. The trial court accepted the testimony of a competent medical expert that defendant was physically able to proceed, over the defendant's unsupported claims of sickness; it had the opportunity to observe defendant's physical appearance and the manner of his conduct, and to hear him express himself; and any conclusion inferring that defendant's "condition" was but a ruse to further delay the trial will not be disturbed. It is more than obvious that from the beginning defendant simply did not want to proceed. On the day he assertedly broke his tooth he did not mention it to the court, but the next day, failing a further attempt to delay, he resorted to the broken tooth, which, when confronted by the doctor became a "filling loss." The results of Dr. Crahan's examination, and the defendant's conduct, cast considerable doubt on the good faith of his claim. Finally faced with the necessity of proceeding, defendant made a variety of complaints, concluding with a request for an immediate examination for "malnutrition"; none of these complaints had been voiced to the doctor who examined him shortly before. The trial court very properly concluded that something had to be done to terminate defendant's dilatory tactics and expedite the trial, and directed defendant to proceed. His "condition" was not such as to prevent defendant from delivering a long dissertation on the Constitution; the rights he claimed he had been denied therein referred in part to the court's failure to continue the trial, and that the statement had been prepared for him in advance makes one wonder if he really ever intended to put on a defense. Moreover, his "condition" in no way contributed to his failure to testify, for the day before he had told the court he did not want to take the stand.

Further error is predicated on the denial of defendant's request for the issuance of subpoenas for the appearance of Gershen and Arenfeld, both of whom were prosecution witnesses and testified at the preliminary hearing. The request was not made until the trial judge directed defendant to proceed with his defense. Involved herein is the continuance of a half-completed jury trial; had the request been granted,

a continuance would have been necessary, for at least one witness, Arenfeld, was then on vacation. ▮ A continuance to obtain the presence of a witness lies within the sound discretion of the trial court (*People* v. *Buckowski*, 37 Cal.2d 629 [233 P.2d 912]; *People* v. *Collins*, 195 Cal. 325 [233 P. 97]; *People* v. *Mason*, 183 Cal.App.2d 168 [6 Cal.Rptr. 649]); ▮▮ and a request therefor must be supported by a showing of due diligence in an attempt to secure his attendance (*People* v. *Lamb*, 133 Cal.App.2d 179 [283 P.2d 727]; *People* v. *Carroll*, 160 Cal.App.2d 6 [324 P.2d 713]) by legal means (*People* v. *Collins*, 195 Cal. 325 [233 P. 97]; *People* v. *Grey*, 180 Cal.App.2d 683 [4 Cal.Rptr. 561]), his expected testimony (*People* v. *Rios*, 172 Cal.App.2d 623 [342 P.2d 317]) and its materiality. (*People* v. *Mellon*, 40 Cal. 648; *People* v. *Walton*, 97 Cal.App. 782 [276 P. 426].)

▮ Defendant offered no explanation to the court relative to the absence of the two witnesses or what he did to produce them (*People* v. *Bloemsma*, 171 Cal.App.2d 261 [340 P.2d 350]); in fact the circumstances point to the conclusion that he never intended to use them and the request was dilatory; or if he did, he not only ignored the means to procure their attendance but failed to inform anyone that he wanted them. There was ample time for defendant to subpoena the witnesses; he was present and heard their testimony at the preliminary hearing; for over two months prior to the trial he knew who they were and their whereabouts, yet defendant elected to wait not only until the trial, but until the very moment of his defense, to request their appearance. Moreover, defendant made no showing either of the testimony he expected Gershen and Arenfeld to give, or its materiality. Vague reference to bringing Arenfeld in ''for challenge'' gives no inkling of the testimony he might give; defendant did not mention the testimony of Gershen; nor did he show their testimony would in any way be material to his defense. The record also fails to disclose the whereabouts of the two witnesses or that their presence could be obtained within a reasonable time. We find no abuse of discretion in the trial court's order.

▮▮ Appellant's claim that because no foundation of due diligence to produce Haskins was laid, the reading of her testimony taken at the preliminary hearing was error, is without merit. Under section 686, subd. 3, Penal Code, a showing of the absence of a witness from the state constitutes sufficient foundation for the introduction of his prior testimony; a showing of due diligence to find him is unnecessary.

Thus, when it is shown that a witness is absent from the state, even temporarily (*People* v. *Harding*, 180 Cal.App.2d 152 [4 Cal.Rptr. 120]), the due diligence requirement of section 686, subd. 3, is inapplicable (*People* v. *Carswell*, 51 Cal.2d 602 [335 P.2d 99]; *People* v. *Barker*, 144 Cal. 705 [78 P. 266]; *People* v. *Martin*, 127 Cal.App.2d 777 [274 P.2d 509]), and due process is not denied the accused by the introduction of testimony taken at the preliminary hearing, in his presence, where he cross-examined the witness or had the opportunity to do so. (*People* v. *Raffington*, 98 Cal.App.2d 455 [220 P.2d 967]; *People* v. *Terry*, 180 Cal.App.2d 48 [4 Cal.Rptr. 597].) The record discloses that Princella Haskins, on the date of the trial, was in the State of Texas; moreover, prejudice to defendant seems doubtful, for her testimony was not seriously disputed by him. (*People* v. *Harding*, 180 Cal.App.2d 152 [4 Cal.Rptr. 120].)

Concerning the evidence, it is undisputed that the homes of Groves and Haskins were burglarized. After securing the premises, Wenston Groves (Count I) left his home at about 6 p. m. on March 16; the sun was almost down, in fact, the sun set at exactly 6:02 p. m. Groves returned at 10:30 p. m. and found his back door unlocked; saw a smooth iron on the sofa, that the front window screen had been cut, the hook opened and the window pried up with a knife; and discovered his television set, two suits and an overcoat missing. On the day after the burglary, March 17, defendant brought Groves' television into Milton Loan Company where John Diener bought it from defendant for $40. He saw defendant sign the bill of sale, and wrote thereon the number of defendant's license. After the transaction defendant told Diener not to report it and no one would be the wiser if he put it in his home. Diener immediately reported it to the police. Thereafter the television was returned to Groves. Defendant wore one of Groves' suits at the preliminary hearing.

Princella Haskins (Count II) locked her home and left at 8 p. m. on March 28; the sun set at 6:11 p. m. She returned at 9:45 p. m. and observed the paint peeled off around the area of the lock on the door; her television and sewing machine were missing. The next day, March 29, defendant took Haskins' television to GGG Pawn Shop where he pawned it for $25. Defendant signed the pawn ticket.

Upon his arrest defendant gave the police conflicting locations of his residence and failed to give the address on his

driver's license. Asked if he had anything in pawn, defendant said ''no.'' Several days later, confronted by a pawn ticket and bill of sale for the television sets stolen from Groves and Haskins (Exhibits 3, 5), he admitted he had sold and pawned the two sets; he claimed he had gotten them from a fellow named ''Slim,'' whom he had known for two years but whose full name, whereabouts and how he could be reached were unknown, but he declared Slim looked ''just about like'' him and that they were almost identical. He denied his signature on the bills of sale but when compared with that on his driver's license he said, ''They sure look like mine.''

Defendant neither offered evidence at the trial nor testified on his own behalf. ▮▮▮▮ Appellant argues that the only evidence linking him to the two burglaries was his ''possession of some of the loot at a time distant from the time of the burglaries.'' The stolen property was found in the possession of defendant, not at a distant time, but on the day after each offense was committed; Diener testified defendant brought in Groves' television on March 17, the day after it was stolen, defendant admitted he sold it, and thereafter at the preliminary hearing defendant wore one of Groves' suits; Prood testified defendant brought in Haskins' television on March 29, the day after it was stolen; and defendant admitted he pawned it.

▮▮▮ It is true that '' [P]ossession alone of property stolen in a burglary is not of itself sufficient to sustain the possessor's conviction of that burglary. There must be corroborating evidence of acts, conduct, or declarations of the accused tending to show his guilt. [Citations.] When possession is shown, however, the corroborating evidence may be slight [citations], and the failure to show that possession was honestly obtained is itself a strong circumstance tending to show the possessor's guilt of the burglary. [Citations.]'' (*People* v. *Citrino,* 46 Cal.2d 284, 288-289 [294 P.2d 32].) ▮▮▮▮ In addition to defendant's possession of the televisions the day after they were stolen, there exists in the evidence numerous incriminating circumstances from which the jury could well infer defendant's guilt—his admitted disposition of the property (*People* v. *Citrino,* 46 Cal.2d 284 [294 P.2d 32] ; *People* v. *Conrad,* 125 Cal.App.2d 184 [270 P.2d 31]), his statement to one of the pawn brokers not to report the transaction, his unsupported claim that the televisions were given to him by a man named Slim, about whom he knew nothing and who looked just like him, (*People* v. *Citrino,* 46 Cal.2d 284 [294

P.2d 32] ; *People* v. *Mercer,* 103 Cal.App.2d 782 [230 P.2d 4]),
his failure to show that possession was honestly obtained
(*People* v. *Lang,* 142 Cal. 482 [76 P. 232] ; *People* v. *Taylor,*
4 Cal.App.2d 214 [40 P.2d 870] ; *People* v. *Kefry,* 166 Cal.
App.2d 179, 189 [332 P.2d 848] ; *People* v. *Golembiewski,* 25
Cal.App.2d 115 [76 P.2d 717] ; *People* v. *Abbott,* 101 Cal. 645
[36 P. 129]), his evasive and false statements to police con-
cerning where he lived and whether he had anything in pawn
(*People* v. *Smith,* 145 Cal.App.2d 149 [302 P.2d 63]), and his
failure to testify—deny or explain. (*People* v. *Chapman,* 156
Cal.App.2d 151 [319 P.2d 8].) This more than amply consti-
tutes the ''slight corroborative evidence of other inculpatory
circumstances'' (*People* v. *Wissenfeld,* 36 Cal.2d 758, 763 [227
P.2d 833] ; *People* v. *Holland,* 82 Cal.App.2d 310, 312 [186
P.2d 58]) required.

 Relative to Count I, Groves left home about 6 p. m.
and returned about 10 :30 p. m. ; the sun set at 6 :02 p. m. Sub-
mitting that it is as likely the burglary occurred during the
day as at night, appellant argues that ''this doubt had to
be resolved in favor of appellant.'' For first degree burglary,
this offense must have been committed between sunset and
sunrise. Appellant would have us believe that it is as likely
that the window screen was cut, the hook opened, the window
pried up, and the house entered between 6 (when the premises
were secured) and 6 :02 p. m., as between 6 :02 and 10 :30 p. m.
Two minutes, with all the burglar had to do after Groves'
departure, to find an available window and gain entrance to
the dwelling, as against 268 minutes, do not appear to present
to the jury two equally plausible choices or reasonable
hypotheses. It is a more reasonable conclusion that the bur-
glar waited until dark before he started to work on the front
window with a knife, slashing the screen and using an iron
bar to pry up the window, than that in broad daylight at
the front of the house, he began his noisy work which would
likely alert neighbors and passers-by. (*People* v. *Ross,* 61
Cal.App. 61 [214 P. 267] ; *People* v. *Schafer,* 161 Cal. 573
[119 P. 920] ; *People* v. *Helsley,* 41 Cal.App.2d 935 [108 P.2d
97].) The finding of the jury in this regard and its acceptance
of the more reasonable conclusion will not be disturbed.
(*People* v. *McCarty,* 117 Cal. 65 [48 P. 984].)

As Jimmie Lee Jones, defendant was charged with having
been convicted of acquiring and transferring marijuana, a
felony, March 31, 1952, in the federal court, for which he

served a prison term. A fingerprint expert testified that he rolled defendant's prints on Exhibit 1A; Exhibit 1B is a certified copy of the conviction of Jones, together with his fingerprint card and photograph. The expert compared the prints appearing on Exhibit 1A and on the card included in Exhibit 1B, and stated his opinion that they were made by one and the same person. The jury, from this testimony and the comparison of the person of the defendant with the photograph, determined that Jones and the defendant were the same. Appellant's complaint that the fingerprint card of Jimmie Lee Jones consists of only "some identification odds and ends" and was not part of the certified record of conviction (Exhibit 1B) is without merit, for the transmittal document for Exhibit 1B discloses, as part of that which was certified, to be the fingerprint card and the photograph.

 Appellant's final claim of error is that there is no evidence in the record to support two instructions on admissions. The jury was not instructed relative to confessions; "admission" was defined, and the jury was admonished to view evidence of an oral admission with caution. As to evidence supporting the instructions, the admissive character of defendant's false, contradictory and misleading statements to police is clear. From his false and evasive statements concerning where he lived, and his refusal to disclose his true address, it may be inferred defendant was there concealing stolen property; his denial that he had anything "in pawn" was rendered false by his subsequent admission, when confronted with the pawn tickets, that he had pawned two televisions; his statement that he had sold them was an admission that he had disposed of property stolen from Groves and Haskins, for the sets were identified by both; and from his obviously fictitious account of how he came into possession of the televisions, it could reasonably be inferred not only that defendant knew they were stolen but that he was the person who took them. Consciousness of guilt may be shown by false, misleading and contradictory statements admissive in character. (*People* v. *Farrell*, 107 Cal.App.2d 25 [236 P.2d 424] ; *People* v. *Walker*, 99 Cal.App.2d 238 [221 P.2d 287].)

 Appellant's claim that these admissions are as consistent with receiving stolen property, as with burglary, is not sound. Coupled with possession is evidence of defendant's conduct and admissive declarations tending to show his guilt of the burglaries; had he elected to testify he could have denied or explained them but he remained silent, leaving

the jury with its logical inference of guilt from the prosecution evidence. (*People* v. *Wells*, 187 Cal.App.2d 324 [9 Cal. Rptr. 384].) Moreover, defendant's account of how he came into possession of the television sets is so flimsy it can hardly be believed, particularly in view of defendant's own use of "Slim's" name and his ignorance of his whereabouts. From this the court could reasonably conclude that "Slim" was a fictitious person (*People* v. *Citrino*, 46 Cal.2d 284 [294 P.2d 32]), and it is a circumstance far more consistent with a finding of burglary than with receiving stolen property. Defendant conveniently neither knew "Slim's" full name nor his whereabouts, but described him as looking "exactly like" him —obviously a person fabricated to introduce the defense of mistaken identity in the event someone saw defendant commit the burglaries and was able to identify him. From this the jury could conclude that defendant made the statement to police knowing it to be false and further that the intentional making of an extrajudicial false explanation indicates a consciousness of guilt. (*People* v. *Wayne*, 41 Cal.2d 814 [264 P.2d 547].)

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 31, 1961.