[Crim. No. 9048. Second Dist., Div. Two. Dec. 20, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES WILLIAM NUNN, Defendant and Appellant.

Leonard Nasatir, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Appellant appeals from the judgment[1] convicting him and a codefendant of the crime of first degree

---

[1]From appellant's notice of appeal, filed in propria persona, it would appear that the appeal is taken only from the order denying the motion

burglary. He admitted the charge that he had suffered a prior burglary conviction.

It appears from the evidence that at approximately 2 :15 a.m. on July 24, 1962, Mr. and Mrs. Clark were awakened by noises in their bedroom. Mrs. Clark heard a drawer in the bedroom being closed and then saw a man walk rapidly past her bed. She went to the front door and saw her 25-year-old son Richard drive up in his car. As Richard approached the residence he had observed appellant and his codefendant, at a distance of about 150 feet therefrom, walking in the opposite direction. His headlights struck both men when he was only a few feet from them and at the trial he was able to identify them positively.

The Clarks discovered the contents of the wife's purse scattered in the living room; the money it had contained was missing. Mr. Clark's wrist watch was also missing. The police were called and descriptions of the missing items of property and of the men seen leaving the area were given them. Appellant and the codefendant were observed near a coffee shop approximately an hour later. They readily consented to empty their pockets, and in both their wallets money was found that matched the denominations missing from Mrs. Clark's purse. Richard Clark was called to the scene and identified the two men as those earlier described by him to the officers. A further search of the two men was made, and Mr. Clark's watch was found in the coat pocket of the codefendant.

While they were being transported to the police station by Officer Brundage, he asked them : ''Just for the sake of argument, how did you get away from the scene of the burglary with so many police vehicles in the area?'' The codefendant answered, ''We left before the police cars got there.'' The officer then asked, ''How did you happen to pick that particular house?'' The codefendant stated that they had not picked a particular house. Appellant made no response either to the questions or to his codefendant's admissions. Neither appellant nor the codefendant testified at the trial and neither called any witnesses in his own behalf.

Appellant's sole assignment of error is that he was prejudiced by the failure of the trial court to appoint counsel for

for a new trial. However, since such order is no longer appealable (Pen. Code, § 1237), and the language of the notice makes clear that appellant *intended* to appeal from the judgment and sentence rendered the same date, we shall construe it in favor of its sufficiency as a notice of appeal from the judgment itself. (Cal. Rules of Court, rule 31(b).)

him on the date set for trial, and that as the result thereof his waiver of a jury trial was ineffective.

The record before us indicates that on August 16, 1962, a deputy public defender was appointed for each defendant. They were arraigned at that time but were granted a week's continuance before entering their pleas. On August 23, 1962, the motion of the deputy public defender to be relieved as counsel for appellant was granted. The same public defender continued to represent the codefendant who thereupon entered a plea of not guilty. Appellant's cause was continued to August 30, 1962, for purposes of plea and to allow him to secure private counsel.

On August 30, 1962, appellant was present with counsel, Louis W. Shaffer. He moved to dismiss the information under section 995 of the Penal Code and "for severance." These motions were set for hearing on September 6, 1962. On this later date the motion under section 995 was withdrawn and the motion for severance denied. Appellant entered a plea of "not guilty" and trial was set for October 1, 1962, the same date set for his codefendant on August 23, 1962.

On September 27, 1962, the matter was advanced upon motion of appellant and his counsel in order that a continuance of the trial date might be requested. The continuance was granted to October 15, 1962. Appellant was arraigned on the charge of the prior conviction which he admitted. On October 15, 1962, both parties were present with counsel. Upon appellant's motion, his counsel was relieved and the matter continued to November 13, 1962. On November 13, 1962, appellant appeared without counsel, moved for a further continuance, which was granted, and the cause was continued to January 7, 1963. On January 7, 1963, the action was again called for trial and the following proceedings were reported:

"THE COURT: Mr. Nunn, are you represented by counsel? DEFENDANT NUNN: I have been unable to obtain counsel. THE COURT: You remember what I told you the last time you were here, that you were going to try your own case today if you were not represented by counsel? DEFENDANT NUNN: Yes, I do, your Honor. I had good and serious intentions but the family finances wouldn't permit it. THE COURT: Are you still employed? DEFENDANT NUNN: I was going to ask the court to appoint one. THE COURT: Not at this time, Mr. Nunn. I warned you the last time. Do you want me to read back what I told you the last time? I had the Reporter read it to me this morning. This is the

fourth time that this case has been continued. DEFENDANT NUNN: I know what you told me the last time. THE COURT: I warned you that if you did not come in with counsel, that you should be prepared to try it yourself; do you recall that? DEFENDANT NUNN: Yes.

"THE COURT: On all of these occasions that it has been continued, I warned you that we couldn't appoint the public defender for you because of the money that you were making. You have had private counsel once, and he has been relieved. This case has been pending since August and it is going to have to be tried, Mr. Nunn. DEFENDANT NUNN: I realize that, and for quite awhile I was doing pretty well financially, but then this slack season came up and a few financial crises arose. THE COURT: As I recall, you were making $165 a week and I can't furnish a lawyer to anybody who is making $165 a week. DEFENDANT NUNN: I was averaging that at the time I told you that. THE COURT: We will hold it for trial. You will have to try your own case."

Thereafter, when the case was again called the following proceedings were had regarding the issue of jury waiver: "MR. BRUNDAGE: [Deputy District Attorney] Your Honor, I have discussed with Mr. Nunn the possibility of whether he wished to waive a jury and be tried by the Court, your Honor, and he informs me at the present time that he wishes to have the matter tried by your Honor in a court trial.

"Is that true, Mr. Nunn? DEFENDANT NUNN: Yes, I don't feel capable of trying a case in front of a jury, and I believe that the Court is capable of fully deciding the matter satisfactorily. THE COURT: What is the position of your client, Mr. Schoenheit? MR. SCHOENHEIT: [Deputy Public Defender] We are willing to waive a jury. THE COURT: You are willing to waive? MR. SCHOENHEIT: Yes. THE COURT: Mr. Nunn and Mr. Field, from what has been said, I understand that both of you now have decided to waive your right to a jury trial in this case, is that right? DEFENDANT FIELD: Yes. DEFENDANT NUNN: Yes, I believe I should. THE COURT: You both understand that you are entitled to a jury trial? DEFENDANT FIELD: Yes. DEFENDANT NUNN: Yes. THE COURT: You are both waiving that right voluntarily, are you? DEFENDANT FIELD: Yes. THE COURT: Mr. Nunn? DEFENDANT NUNN: Yes. THE COURT: Very well."

█  In support of his contentions appellant relies largely upon the conceded fact that "The right to counsel is a fundamental constitutional right, which has been carefully guarded by the courts of this state." (*In re James*, 38 Cal.2d 302,

310 [240 P.2d 596].) However, as pointed out in *People* v. *Adamson,* 34 Cal.2d 320, 332-333 [210 P.2d 13]: "Of course defendant's right to counsel does not include the right to postpone the trial of a case indefinitely and reject the services of the public defender while defendant, at his leisure, attempts to find counsel who will serve without charge and of whom defendant ... approves[s]. (*See People* v. *Manchetti* (1946) 29 Cal.2d 452, 458 [175 P.2d 533], and cases there cited.)"

Or, as stated in the earlier case of *In re Connor,* 16 Cal.2d 701, 709 [108 P.2d 10], and recently repeated in *People* v. *Thomas,* 58 Cal.2d 121, 131-132 [23 Cal.Rptr. 161, 373 P.2d 97]: "The right to the assistance of counsel guaranteed by the constitutional and statutory provisions, like any other legal right, may be invoked only in the course of orderly procedure. A defendant who, with an intelligent conception of the consequences of his act, declines the aid of counsel prior to or at the commencement of his trial, is not entitled thereafter to interrupt and delay the hearing at any stage he deems advantageous merely to interpose a demand for legal assistance. . . ."

It should be noted also that although appellant relies heavily upon the recent decision in *Gidcon* v. *Wainwright,* 372 U.S. 335, 339-340 [83 S.Ct. 792, 9 L.E.2d 799, 802], the present case clearly is not one involving an indigent defendant. Defendant in his own statements to the trial court conceded that he had advised that court that he was earning an average of $165 a week and, further, that he "was doing pretty well financially until a few financial crises arose." He did not answer the judge's inquiry, "Are you still employed?" but merely stated, "I was going to ask the Court to appoint one [an attorney]."

In addition to his failure to obtain an attorney during a period when admittedly he was financially able to do so, the record reveals that at the probation and sentence hearing, when appellant first complained of the court's failure to appoint counsel for him, he stated that he had not requested that the public defender be relieved. In response to this comment the court stated: "He made a motion to be relieved because he couldn't get along with you as a client. You were pretty con on this business, Mr. Nunn. You are pretty smart. You are what we call a jackleg lawyer. You have been through this several times and you have been playing footsie with the Court. That is what you have been doing." To this appellant replied: "If you say so."

■ Clearly, one who rejects the services of the public defender, either in words or by overt refusal to cooperate with him, cannot thereafter complain of the deprivation resulting from his own acts. This subject was analyzed at length in *People* v. *Douglas,* 187 Cal.App.2d 802, 806-807 [10 Cal.Rptr. 188] (hearing denied, but reversed on other grounds in *Douglas* v. *State of California,* 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811]), in the following language:

"*People* v. *Simeone,* 132 Cal.App.2d 593 [282 P.2d 971], says (p. 597): '[W]hen the court assigned the public defender to represent appellant, the accused had at hand one of the best equipped law offices in the state to champion his cause. It has a corps of vigorous, learned, amiable gentlemen who present their causes with force and intelligence.... Where a person accused of crime refuses to be represented by the Public Defender of Los Angeles County, and demands that some practicing lawyer leave his private practice in order to defend such accused, the latter prefers to have cause for a grouch rather than a chance to defeat his accusers. Because there are thousands of lawyers in Los Angeles County who would gladly suffer much inconvenience rather than see the constitutional right of an accused violated, is no reason why a defendant should be privileged to dawdle with the trial court, to neglect for four weeks to obtain counsel, and then have his conviction reversed because he did not choose to be represented by the public defender.'

"And in *People* v. *Williams,* 174 Cal.App.2d 364 [345 P.2d 47], (p. 378): 'We perceive no grounds, legal or otherwise, why an accused should be permitted to refuse the services of the public defender, waive his right to counsel unless one of his choice is appointed, and then have his conviction reversed because he did not choose to be represented by the legal aid provided by the county.'

"Again, in *People* v. *Duncan,* 175 Cal.App.2d 372 [346 P.2d 521], (p. 382): 'Defendant's right to represent himself no more includes the right to reject the services of the public defender and postpone indefinitely the trial, allowing him to at his leisure attempt to find counsel who will serve without charge, than does defendant's right to counsel.' "

As we have indicated, *People* v. *Douglas, supra,* was remanded to this court for further proceedings, but only upon the issue of the failure to appoint counsel for appellants therein upon their appeal. The majority of the United States Supreme Court declined to pass upon any other contention raised, but Justice Harlan, with whom Mr. Justice Stewart

joined, included the following in a footnote to his dissent (p. 367):

"Petitioners also contend that they were denied the effective assistance of counsel at trial. This claim, in my view, is without merit. A reading of the record leaves little doubt that petitioners' dismissal of their appointed counsel and their efforts to obtain a continuance *were designed to delay the proceedings and, in all likelihood, to manufacture an appealable issue.* Moreover, the trial court acted well within constitutional bounds in denying the claim that there was a conflict of interest between Douglas and Meyes that required a separate appointed attorney for each." (Italics added.)

Such comments are equally applicable here. Although appellant's prior conviction would indicate that he must have had some working knowledge of court procedure, he did not attempt to introduce even a semblance of a defense; and indeed even now the existence of one is not suggested.[2] Our trial court would indeed be helpless, if after four continuances and the dismissal by an accused of both his own selected counsel and court-appointed counsel, a defendant could continue to avoid his day of accounting by generalized assertions regarding financial conditions made upon each new trial date. ▪ As stated in *Johnson* v. *Zerbst*, 304 U.S. 458, 465 [58 S.Ct. 1019, 82 L.Ed. 1461, 1467, 146 A.L.R. 357], with reference to the question whether or not there had been a waiver of the right to counsel:

"The constitutional right of an accused to be represented by Counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without Counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to Coun-

---

[2] In fact, since appellant did not choose to testify, to present any witnesses, cross-examine those presented against him or even to argue his case at its conclusion, the only statement found in the record regarding his position in regard to his guilt or innocence is found in the dialogue that followed the determination of the guilt of both defendants. Appellant moved to be allowed to remain on bail pending the probation and sentence hearing alleging that he was "presently doing some roofing jobs." The following colloquy then occurred. "THE COURT: I think you are a *professional burglar*, Mr. Nunn. I am going to take you out of circulation. You are remanded to the custody of the sheriff. DEFENDANT NUNN: I was trying to show that I was a *professional roofer, too.* THE COURT: They both don't go together. . . ." (Italics added.)

sel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.''

██ The trial judge in the instant case, who had the opportunity to observe appellant and judge his integrity, repeatedly expressed his belief that appellant's conduct was designed purposely to disrupt the proceedings and amounted to a waiver of the right to counsel. At the probation and sentence hearing, where appellant first complained of the court's failure to appoint counsel for him, he stated: ''As to Mr. Shaffer, Mr. Shaffer originally requested Judge Fox to relieve him because he didn't have his retainer, which I was unable to raise. *Judge Fox wouldn't relieve him.* So Mr. Shaffer then informed me not to force him into court if I wasn't able to raise the full amount of money. That is how that particular relief came about.'' (Italics added.) To this comment the court replied: ''You have had adequate opportunity to be represented, in my opinion.''

This determination finds more than adequate support in the record and the trial court's ruling certainly constituted no abuse of discretion. ██ Where it is conceded that the attorney employed by the accused sought to be relieved and that such request was *denied,* certainly it cannot be said as a *matter of law* that the trial court was bound to give credence to the insinuation of the accused that later he had agreed to the discharge because his attorney impliedly had threatened him with inadequate representation. This is particularly true where such contention was not raised either at the time the attorney was discharged, or at the time a further continuance was granted, or at the time of the trial itself, but only after the trial proceedings had been completed and had resulted in his conviction.

██ In view of our resolution of this contention, it is apparent that appellant's argument that he was improperly deprived of his right to a jury trial is likewise without merit. A jury trial is a right that may be waived (Cal. Const., art. I, § 7), and the record above quoted makes clear the present waiver was intelligently made with appellant's full consent. Since appellant had forfeited his right to further continuances for the purpose of securing counsel, he had to make the determination as to the better manner in which to proceed. That he knowingly made his decision is conclusively demonstrated by his statement: ''Yes, I don't feel capable of trying a case in front of a jury, *and I believe that the Court is*

*capable of fully deciding the matter satisfactorily.''* (Italics added.)

Only if the trial court's refusal to continue the case further had been unwarranted could the quoted statement reasonably be regarded as indicative that appellant had been coerced into abandoning a constitutional right. During oral argument it was urged by appellant's counsel that this was not a case involving a request for a continuance, but solely one concerned with an unjustifiable failure to appoint counsel. Such a contention, of course, is patently unreasonable, for it is manifest that if new counsel had been appointed on the date set for trial, he would *immediately* have had to request a substantial continuance in order to familiarize himself with the case. If such a request had been refused appellant undoubtedly would not now be urging that he was ready to proceed to trial that very day with any counsel that might have been appointed. Rather, he would be arguing, and with merit, that he had received only pro forma representation.

Judgment affirmed.

Fox, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 12, 1964.