172 So.2d 876 (1965)
Wayne H. BROOKS, Appellant,
v.
STATE of Florida, Appellee.
No. G-64.
District Court of Appeal of Florida. First District.
March 16, 1965.
*877 Wayne H. Brooks in pro. per.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
RAWLS, Judge.
Wayne Brooks, in proper person, has perfected an appeal in this cause from a conviction of breaking and entering and grand larceny.
We first consider Brooks' complaint about the quality of the lawyer furnished to him by the trial court. The Public Defender for the Eighth Judicial Circuit, pursuant to Court Order, represented defendant prior to and during the trial of this cause. After a verdict of guilty was rendered by the jury and upon being adjudged guilty by the trial court, the defendant decided that "court appointed counsel during the trial of the cause had been ineffective and ineffectual."
We are by no means the first jurisdiction to be confronted with the problem posed by Brooks's allegations of "ineffectual and ineffective counsel." It is significant in reviewing federal and state cases dealing with analogous situations, that in almost every instance the complainant is one well seasoned and versed in court procedure as a result of prior bouts with trial courts.
*878 The Tenth Circuit Court of Appeals in disposing of a similar complaint in Frand v. United States,[1] stated:
"Lack of effective assistance of counsel in the trial of a criminal case constitutes impingement upon a constitutional right of the accused and lays the judgment and sentence open to collateral attack by motion under the statute. But the constitutional right to the effective assistance of counsel does not vest in the accused the right to the services of an attorney who meets any specified aptitude test in point of professional skill. And common mistakes of judgment on the part of counsel, common mistakes of strategy, common mistakes of trial tactics, or common errors of policy in the course of a criminal case do not constitute grounds for collateral attack upon the judgment and sentence by motion under the statute. It is instances in which resulting from the substandard level of the services of the attorney the trial becomes mockery and farcical that the judgment is open to collateral attack on the ground that the accused was deprived of his constitutional right to effective assistance of counsel. Mitchell v. United States, 104 U.S.App. D.C. 57, 259 F.2d 787, certiorari denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86; Black v. United States, 9 Cir., 269 F.2d 38, certiorari denied, 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357."
And a like decision was reached in Hickock v. Crouse wherein it was held:[2]
"Of course, as said in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 722, the right to counsel in criminal cases is a fundamental right guaranteed by the due process clause of the Fourteenth Amendment to the Constitution. This means good-faith representation, with all the skill which counsel possesses, but it does not contemplate that miracles will be performed or that counsel, court-appointed or otherwise, should be subject to criticism by the courts when a guilty client is convicted and brought to justice, if he has performed his duty to the best of his ability. Counsel's duty in a criminal case is to demand and obtain a fair trial for the accused.
Although it may often appear otherwise, he has no duty to use devious means to secure an acquittal of a guilty person or to harass a court with unwarranted objections and motions. What we said in Hester v. United States, 10 Cir., 303 F.2d 47, 49, cert. denied 371 U.S. 847, 83 S.Ct. 80, 9 L.Ed.2d 82, is appropriate here: (Emphasis supplied.)
"`* * * Neither vigor nor skill can overcome truth. Success is not the test of effective assistance of counsel. Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787.' See, also, Floyd E. Johnson v. Crouse, Warden, 10 Cir., 332 F.2d 417."
We pause to note that the transcript of this trial reveals able and vigorous representation on the part of the public defender. Further, the record supports the sagacity of the jury in reaching its verdict of guilty. We paraphrase an excerpt from Reid v. United States[3] in holding that a review of the record indicates that Brooks was provided adequate trial representation and that his conviction was not due to the lack of such representation but to the evidence which was overwhelmingly against Brooks.
The next grievance lodged by Brooks is that the trial court deprived him *879 of a basic constitutional right in that it did not furnish him counsel for taking a direct appeal. Brooks was duly adjudged to be insolvent. It is well settled that an indigent is entitled to be provided with counsel for taking a direct appeal when he makes known to the trial court his intention to appeal.[4] In disposing of this grievance, it is necessary to examine certain proceedings that occurred in the trial court. On June 9, 1964, immediately after being adjudicated guilty by the trial judge, Brooks moved the court for appointment of counsel, other than the public defender, for purposes of appeal. Subsequently, in proper person, he filed notice of appeal, directions to the clerk, and directions to the court reporter. On July 10, 1964, the court entered an order appointing R.A. Green, Jr., Public Defender for the Eighth Judicial Circuit, as counsel for defendant for purposes of appeal, and on the same date Brooks again moved the court to appoint someone other than the Public Defender. On August 10, 1964, the trial judge discharged the court-appointed counsel by an order stating:
"1. * * * That this Court on the 10th day of July, 1964, entered an Order appointing R.A. GREEN, JR., Public Defender for the Eighth Judicial Circuit, counsel for Defendant for purposes of appeal.
"2. That in the above mentioned Motion for Appointment of Counsel other than the Public Defender and in Defendant's Assignment of Errors, petitioner, R.A. GREEN, JR., was charged with incompetence and negligence in handling of the Defendant's case; That these Assignment of Errors are those which the Defendant intends to rely on in his appeal and that to put petitioner, R.A. GREEN, JR., in a position of having to argue to the Court of Appeals his own incompetence would be incomprehensible and would not serve the best interest of justice.
"3. The Court finds that each and every complaint filed against petitioner in Defendant's Assignment of Errors by Defendant is completely without merit or foundation; That petitioner, R.A. GREEN, JR., rendered Defendant Brooks competent, zealous, and enthusiastic legal counsel from the day of his first appointment up to and through the day of Defendant's trial. That from the first, Defendant Brooks was incorrigible, stubborn, and completely uncooperative with petitioner, and this Court was advised before trial that petitioner was unable to induce Defendant to follow his legal advice. Defendant was rude and otherwise incorrigible to petitioner as well as to this Court.
"4. That this Court also finds that the jury conviction complained of by Defendant was justified by the evidence and as evidence of the zealous manner in which petitioner defended Defendant, it is pointed out that the co-defendant in this case, ROBERT WAYNE CHAPMAN, was convicted of the identical offense when said ROBERT WAYNE CHAPMAN was defended by highly reputed and highly paid legal counsel.
"5. That to continue to require petitioner to prosecute this appeal with the attitude and wishes of Defendant would be both personally obnoxious to petitioner and not in the best interest of the Defendant Brooks."
As we view this question, Brooks is of the opinion that an indigent may unilaterally determine that counsel appointed to represent him has been ineffective and ineffectual in the trial of a cause, discharge such counsel, and demand that other counsel be appointed to represent him on appeal.
The Sixth Amendment to the United States Constitution has for a long period of *880 time been construed to require appointment of counsel for those indigents accused of committing a crime in violation of federal laws; therefore, the federal courts have had considerable experience in wrestling with such contentions. In 1945 in an opinion authored by the learned Augustus Hand, and concurred in by his able colleague and cousin Learned Hand, the Second Circuit Court of Appeals stated in United States v. Gutterman:[5]
"What he [indigent defendant] apparently wanted was the assignment of another lawyer who, he hoped, would conduct the case just as he directed. His failure to take the risk of acting on his own behalf while retaining Mr. Packer to conduct his defense gave him the advantage of being represented by counsel and at the same time of preserving an objection to the failure of the court to accede to his primary wish of obtaining counsel more to his personal liking.
"If a defendant is unable to employ an attorney he must accept such counsel as the court assigns unless he can furnish a better reason for requiring a change than he has given here or unless he chooses to dispense with counsel and undertake his own defense."
A similar situation was presented to the Eighth Circuit Court of Appeals in Johnson v. United States.[6] There the trial court appointed a Mr. Joseph L. Flynn as counsel for Defendant. Immediately prior to trial the following colloquy was held between the court and the defendant:
"`The Court: * * * I have appointed Mr. Flynn as your attorney and he is a good lawyer. He was in the District Attorney's office for a number of years. He is in the practice and I know of no man who is more capable of advising you as to the law than Mr. Flynn. You say you do not want Mr. Flynn to represent you?
"`Defendant Johnson: No, sir, he has had six months and he has done nothing.'
* * * * * *
"`Defendant Johnson: That is what I say. I believe Mr. Flynn would do it the best he could, but he doesn't understand the points that I want.
"`The Court: I see, he doesn't understand. You realize you are entitled to have a lawyer if you want one. The Court has appointed a lawyer for you and a good lawyer. If you do not want this lawyer to represent you, you have a perfect right to try your own case, but I am not going to appoint another lawyer for you. I am not going to do that. I have done all that the law requires. I have appointed a good lawyer and he has advised you, and if you insist on a trial, I suppose Mr. Flynn should sit here and see that the defendant is properly given a fair trial. If you do not want him to do that, then I think he must be excused. Is that what you want?
"`Defendant Johnson: Well, I would like to see that my Constitutional rights 
"`The Court: I have done all I can do for you. I am not going to appoint another lawyer. If you want Mr. Flynn to withdraw, all right, but I am not going to appoint another lawyer.'"
The Court, upon reviewing the question of whether Defendant had been deprived of his Constitutional right of counsel held that by his conduct he waived counsel, stating:[7]
"A defendant in a federal criminal trial, by virtue of the Sixth Amendment, *881 is entitled to representation by counsel in the trial court. If the defendant is without funds, the court is required to appoint competent counsel to represent him. The trial court recognized this constitutional right of the defendant by appointing Mr. Joseph L. Flynn, of the St. Joseph, Missouri, Bar, as counsel for defendant.
"It is equally well-settled that a defendant charged with a federal crime may waive his right to representation by counsel `if he knows what he is doing and his choice is made with eyes open.' Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 241-242, 87 L.Ed. 268; Johnson v. Zerbst, 304 U.S. 458, 468-[4]69, 58 S.Ct. 1019, 82 L.Ed. 1461; Hayes v. United States, 8 Cir., 296 F.2d 657, 668; Lipscomb v. United States, 8 Cir., 209 F.2d 831, 834; Glenn v. United States, 5 Cir., 303 F.2d 536, 540; Igo v. United States, 10 Cir., 303 F.2d 317, 318; Arellanes v. United States, 9 Cir., 302 F.2d 603, 610; Watts v. United States, 9 Cir., 273 F.2d 10, 12.
* * * * * *
"In our present case, the record supports a finding of waiver of counsel."
Our sister state of California has developed substantive case law upon the subject during the many years it has provided counsel for indigents accused of committing criminal offenses against the State. In People v. Nunn,[8] it was held:
"Clearly, one who rejects the services of the public defender, either in words or by overt refusal to cooperate with him, cannot thereafter complain of the deprivation resulting from his own acts. This subject was analyzed at length in People v. Douglas, 187 Cal. App.2d 802, 806-807, 10 Cal. Rptr. 188 (hearing denied, but reversed on other grounds in Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811), in the following language:
* * * * * *
"`And in People v. Williams, 174 Cal. App.2d 364, at page 378, 345 P.2d 47, at page 56: "We perceive no grounds, legal or otherwise, why an accused should be permitted to refuse the services of the public defender, waive his right to counsel unless one of his choice is appointed, and then have his conviction reversed because he did not choose to be represented by the legal aid provided by the county."
"`Again, in People v. Duncan, 175 Cal. App.2d 372, at page 382, 346 P.2d 521, at page 528: "Defendant's right to represent himself no more includes the right to reject the services of the public defender and postpone indefinitely the trial, allowing him to at his leisure attempt to find counsel who will serve without charge, than does defendant's right to counsel."
And in People v. Terry,[9] it was stated:
"Court-appointed counsel must be accepted by the accused in the absence of some compelling reason to the contrary (People v. Ortiz, 195 Cal. App.2d 112, 116, 15 Cal. Rptr. 398), and he is not entitled to court-appointed counsel of his own choosing (People v. Chessman, 52 Cal.2d 467, 491, 341 P.2d 679)."
In State v. Erickson[10] the South Dakota Supreme Court after reviewing the defendant's attitude stated what we conceive to be a side of the question that has too often been ignored since the Gideon decision, when it said:
"* * * it is also a sound concept that the court-appointed attorney as well as *882 the accused is entitled to fair consideration. An attorney is an officer of any court in which he is entitled to appear. He is a member of a distinguished and time-honored profession. He must conform to recognized ethical standards in criminal practice and be true to his own conscience. Court appointment to represent an indigent does not entail a surrender of the high principles traditionally attached to the legal profession."
The trial of a criminal cause is not a game to see by what legal stratagem one may escape punishment for the commission of an offense against the general public.[11] While the right to counsel is absolute, its exercise must be subject to the necessities of sound judicial administration.[12] The constitutional right to be represented by counsel does not, of course, guarantee an attorney with whose advice the defendant can agree.[13] Judicial proceedings providing a forum for a fair and impartial hearing and trial before his peers must be provided by the state to one accused of committing a crime. On the other hand, the public welfare demands that such a procedure be carried forth in an orderly manner; otherwise, the judicial system becomes "farcical and a mockery" and society as a whole reverts to the law of the jungle. To permit a "jail house lawyer" to seize upon every imaginable incident as being a deprivation of a constitutional right and thereby disrupt the judicial processes to such an extent that a final disposition of his cause is postponed beyond the availability of witnesses, is to say in the name of due process that justice is not available to the citizens of a state against an individual. To permit a defendant, be he indigent or otherwise, to conduct, on the one hand, the trial of his cause as he deems advisable, but on the other hand to scream that "he" has been deprived of a constitutional guarantee because "he" is not furnished, at the expense of the general public, an attorney who concurs "with him" as to the manner of conducting an appeal, is to completely disregard the purposes for which counsel is furnished. Counsel is furnished for the purposes of advising and guiding an indigent defendant and to assist him in preparing his case, taking into consideration his rights as guaranteed by the State and Federal Constitutions. Counsel is not provided for the purpose of serving as a mouthpiece for the defendant, nor is such counsel required to conduct himself as an errand boy to carry out the defendant's legal theories  and once failing so to do, to be summarily discharged by defendant and another appointed for such purpose. We are fearful that the basic function of a lawyer appointed to represent a defendant has, to great extent, escaped not only indigent defendants but, in many instances, the appellate courts.
Having reviewed the purposes for which counsel is appointed, we now examine Brooks's grievance that "he is in dire need of counsel to cope with the many and complicated aspects of law." As noted above, counsel was appointed for Brooks. Brooks denied his counsel twice and proceeded to run this appeal as he, Brooks, felt it should be operated. We hasten to say that Brooks obviously has not been deprived of any constitutional right on this appeal and has served as his own counsel in such manner as to present to this Court every possible, conceivable, potential error that may have occurred prior to and during his trial. This record discloses that Brooks is skilled in dealing with law enforcement officers and with courts and that his knowledge of his constitutional rights as expressed *883 in his 75 page brief which cites 61 cases, 4 Florida Statutes, 4 Sections of the Florida Constitution, 5 sections of the United States Constitution, 1 Federal Rule and 3 other reports including Cooley's Constitutional Law, confirms his extensive knowledge of his constitutional rights. It would be difficult to unknowingly deprive this appellant of any right. The right of an accused to the service of legal counsel envisages that his attorney will investigate and consider possible defenses and, if none, other procedures, and exercise his good-faith judgment thereon. It does not contemplate that an accused may take charge of the case after an attorney has been appointed, or dictate its course, or make counsel's educated judgment the pawn of an unreasonable and obdurate malefactor. Brooks had the constitutional right to appointment of an attorney to represent him on appeal; a capable attorney was so appointed; and Brooks in the absence of any compelling reason rejected the services of the appointed attorney. He then proceeded to perfect this appeal in the manner he thought it should be conducted, which he had the constitutional right to do. But he did not, and does not, have the constitutional right to dictate to court-appointed counsel as to how an appeal must be conducted. As we stated in Wilder v. State:[14]
"We do not understand it to be the law of this state or of the United States, constitutional or otherwise, that one entitled to be furnished counsel at the expense of the state or its component parts may willy-nilly compel the courts to discharge competent and conscientious counsel duly appointed to provide him with legal services, or that he is entitled to the services of more than one attorney in the premises, or that he has the right to designate the attorney who shall be so employed to represent him.
"Finally, we are not unmindful of the canons of ethics governing the relationship between attorney and client, but know of no rule that compels the attorney to stultify himself or debase his moral and intellectual integrity by presenting on behalf of his client, whether an indigent or solvent person, a trumped-up, purely visionary, or fully rejected argument of law solely for the sake of argument. It is not remotely demonstrated that appellant's counsel of record has violated any canon of professional ethics."
We conclude that Brooks "knew what he was doing and made his choice with eyes open" to waive counsel and that the record in the instant case supports a finding of this waiver.[15]
We now go to the merits of the appeal proper. After eliminating the sordes contained in appellant's grievances, his points on appeal boil down to the following:
1. He did not have the assistance of counsel as soon as an investigation made him a prime suspect.
2. He was held incommunicado for 30 hours after being arrested and was not furnished counsel prior to being carried before the magistrate.
3. He has been denied his constitutional rights in that he was charged by an information rather than indicted by a grand jury and that court-appointed counsel was ineffective because he failed to raise this point.
4. He alleges other various errors on the part of the trial court during the course of the trial.
Factually, Brooks and one Robert Wayne Chapman were tried on charges of breaking and entering and grand larceny of a business located in Gainesville, Florida. The state proved that a safe located in the business had been forceably opened; that at the time police officers arrived on the *884 scene the safe was still hot, the room in which it was located was smokey and lying on the floor in close proximity was some money, an acetylene tank, a sledge hammer and goggles; and that entry had been obtained through a circular hole cut in the roof of the building. Defendant and his accomplice were arrested about 15 minutes later, shortly after midnight, in an upstairs storeroom of a pharmacy located approximately one block from the scene of the crime. The state adduced substantial proof connecting defendant with the robbery.
We will not belabor defendant's points on appeal for they constitute in general the current allegations that are presented to us from day to day by other incarcerated persons whom it appears are now anticipating another United States Supreme Court "prison-door-opening decision". In almost every such case a strong point on appeal is that the accused was held incommunicado and not indicted by a grand jury pursuant to the provisions of Article 6 of the United States Constitution. Admitting in the case sub judice that appellant was held incommunicado for a period of 30 hours, there is no semblance of any injury having resulted since we are not here concerned with any confession or admission against interest made by him at any time.[16]
As to Brooks's complaint about not being proceeded against by an indictment rather than by information, this procedure was approved as early as 1927 in Sawyer v. State,[17] wherein the Supreme Court of Florida held that Section 10 of the Declaration of Rights contained in the Constitution of 1885 when construed in connection with Section 28 of Article 5 does not require that persons accused of felonies less than capital be proceeded against only upon presentment or indictment by a grand jury, but on the contrary expressly authorized prosecution by information under oath filed by the prosecuting attorney.[18]
As to the errors urged by appellant occurring during trial, it is noted that a motion for continuance was made during the course of trial on the ground that since the beginning of trial it had come to counsel's attention for the first time that an out-of-state witness could testify that defendant was employed at his place of business in Columbus, Georgia, during all of the daylight hours of January 9, 1964. Refusal by the trial court to grant a continuance to a defendant made under these circumstances is not reversible error. Appellant also alleges that error occurred by the state's recalling a witness. His position on this point seems to be founded upon his observation that his counsel, during a recess, while talking in a loud voice observed that the state would not be able to introduce into evidence a money bag and its contents because the prosecution forgot to have it admitted in evidence when a particular witness was on the stand. This conversation was overheard by a state's witness, relayed to the prosecuting attorney and the error was corrected. We dispose of such contention by again observing that a trial is not a game but is a search for the truth.
Finally, appellant has barraged this Court with various instruments, some of which are styled "Petitions for Mandamus," another being termed a petition of injunction, and others as motions for bail *885 pending appeal. The so-called petitions for mandamus and injunction are denied. As to the question of bail for purposes of appeal, it is well settled that such is not a matter of right, but is discretionary on the part of the trial court.[19] We find no abuse of discretion by the trial court, especially considering appellant's allegation that he is a fugitive of justice from the State of North Carolina.
It is our conclusion that this appellant has been afforded a fair trial in which his constitutional rights were safeguarded and that his conviction resulted from the overwhelming evidence duly presented against him.
Affirmed.
STURGIS, Chief Judge, and WIGGINTON, J., concur.
NOTES
[1] Frand v. United States, 301 F.2d 102, 103 (1962).
[2] Hickock v. Crouse, 334 F.2d 95, 100, 101 (10 Cir., 1964).
[3] Reid v. United States, 334 F.2d 915 (10 Cir.1964).
[4] Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); and State v. Weeks, 166 So.2d 892 (Fla. 1964).
[5] United States v. Gutterman, 147 F.2d 540, 542, 157 A.L.R. 1221 (1945).
[6] Johnson v. United States, 318 F.2d 855, 857 (1963).
[7] Id. at 856.
[8] People v. Nunn, 223 Cal. App.2d 658, 35 Cal. Rptr. 884, 888 (1963).
[9] People v. Terry, 224 Cal. App.2d 415, 36 Cal. Rptr. 722, 724 (1964).
[10] State ex rel. Burns v. Erickson, 129 N.W.2d 712, 716 (S.D. 1964).
[11] McGuire v. United States, 273 U.S. 95, 99, 47 S.Ct. 259, 260, 71 L.Ed. 556.
[12] United States v. Dardi, 330 F.2d 316 (2 Cir., 1964); United States v. Arlen, 252 F.2d 491, 494 (2d Cir.1958).
[13] Arellanes v. United States, 326 F.2d 560, 561 (9 Cir., 1964); Whitney v. Cochran, 152 So.2d 727 (Fla. 1963).
[14] Wilder v. State, 156 So.2d 395, 397 (Fla.App.1st, 1963).
[15] Johnson v. United States, supra.
[16] See Di Bona v. State, 121 So.2d 192 (Fla.App.2d 1960); Baugus v. State, 141 So.2d 264 (Fla. 1962); and Lassiter v. State, 166 So.2d 159 (Fla.App.1st, 1964).
[17] Sawyer v. State, 94 Fla. 60, 113 So. 736 (1927).
[18] See Davis v. State, 166 So.2d 189 (Fla.App.1st, 1964); Koch v. Zuieback, 9 Cir., 316 F.2d 1; Vitiello v. State, 167 So.2d 629 (Fla.App.3d, 1964); Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 292, 28 L.Ed. 232; Maxwell v. Dow, 176 U.S. 581, 20 S.Ct. 448, 44 L.Ed. 597; and Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98.
[19] Lambert v. State, 151 So.2d 675 (Fla. App.1st, 1963); Stalnaker v. State, 126 Fla. 407, 171 So. 226 (Fla. 1936); and 4 Fla.Jur., Bail & Recognizance § 25, p. 47.